# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OPTIMAL INTERIORS, LLC, | ) |
| | ) |
| Plaintiff, | ) CIVIL ACTION |
| | ) No. 09-cv-1906 |
| v. | ) |
| THE HON COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                                               **November 13, 2009**

      Plaintiff Optimal Interiors, LLC ("Optimal Interiors") brings this action against Defendant The HON Company ("HON"), alleging breach of contract and breach of the covenant of good faith and fair dealing. This Court maintains subject matter jurisdiction over the action pursuant to 28 U.S.C. §1332. Now before this Court is Defendant's Motion to Transfer Venue to the United States District Court for the Southern District of Iowa pursuant to 28 U.S.C. §1404(a). For reasons set forth below, Defendant's Motion is granted.

## I. FACTUAL BACKGROUND

      This case arises from events surrounding a five-year renewable contract entered into by Plaintiff Optimal Interiors and Defendant HON, by which Optimal Interiors granted HON the right to sublicense its interactive software application called IOPro™ to select dealers within HON's dealer network.[1] Plaintiff is a limited liability company organized and existing under the laws of the State of Missouri and maintains its principal place of business in St. Louis,

---

[1] Compl. [Docket Entry No. 1] ¶ 13.

Missouri.[2]  Mr. John Harvey, a resident of Tennessee, and Mr. Dennis Young, a resident of Missouri, are the sole members of Optimal Interiors.[3]  Defendant is a publically held corporation organized and existing under the laws of the State of Iowa and maintains its principal place of business in Muscatine, Iowa.[4]  Defendant is in the business of selling workplace furniture to businesses and educational institutions via a national network of dealers and retailers.[5]

Over a period of approximately four years, Plaintiff invented and developed the IOPro$^{TM}$ software application to ultimately market to commercial furniture providers.[6]  In 2006, Mr. John Harvey of Optimal Interiors contacted Defendant in Iowa to solicit the company as a potential customer.[7]  Later that same year, Mr. Harvey visited Defendant's headquarters in Muscatine, Iowa to present and market IOPro$^{TM}$ to HON executives.  Defendant, however, declined to enter into a business agreement with Plaintiff at that time.[8]  One year later, in the Fall of 2007, Plaintiff contacted Mr. Bruce Reinhart, Defendant's National Education Sales Manager, by telephone in Iowa to inform him that Optimal Interiors had revised and upgraded its IOPro$^{TM}$ software and requested a second opportunity to present IOPro$^{TM}$ to HON executives.[9]  In January of 2008, Mr. Reinhart met with Mr. Harvey in St. Louis, Missouri to further discuss IOPro$^{TM}$ and

---

[2] Id. ¶ 1.

[3] Id.

[4] Id. ¶ 2.  The Court takes judicial notice that Muscatine, Iowa is located within the Southern District of Iowa.

[5] Id.

[6] Id. ¶¶ 7, 8.

[7] Def.'s Motion to Transfer Venue, Ex. A [Docket Entry No. 5] ¶ 4.

[8] Id. ¶ 5.

[9] Id. ¶ 6.

in the Spring of 2008, Plaintiff traveled once more to Defendant's headquarters to present and market IOPro™ to HON personnel.[10] One month later, Mr. Harvey returned to Muscatine, Iowa for preliminary discussions with HON's senior management regarding IOPro™.[11] Over the next several months, the parties negotiated the terms of a potential licensing agreement. As part of these negotiations, Mr. Harvey visited Defendant's headquarters in Muscatine, Iowa between ten to fifteen times.[12] Additional meetings between Mr. Harvey and Mr. Reinhart occurred in Illinois, Tennessee, and Florida.[13] No meetings or contact occurred in Pennsylvania.

On August 18, 2008, Plaintiff and Defendant entered into a five-year renewable Distribution Partner Agreement (hereinafter "Agreement"), which contained an Iowa choice-of-law provision, wherein Defendant was granted the right to sublicense IOPro™ to select dealers within its dealer network and exclusive rights to market IOPro™ in the educational market.[14] The Agreement, also required the parties to develop a mutually agreeable Dealer Marketing Program within sixty days of execution that would be used to market IOPro™ to other potential customers.[15]

Following execution of the Agreement, Defendant met with approximately forty-nine dealers and customers to demonstrate IOPro™, of which only three were located in the Eastern

---

[10] Id. ¶¶ 8, 9.

[11] Id. ¶ 10.

[12] Id. ¶ 12.

[13] Pl.'s Mem. Of Law Opp'n to Def.'s Mot. to Transfer Venue, Ex. H [Docket Entry No. 13] ¶ 13.

[14] Compl. ¶ 13; Compl., Ex. A at §11.8.

[15] Compl. ¶ 18.

3

District of Pennsylvania.[16]  Of the forty-nine dealers solicited by Defendant, only one agreed to purchase the rights to IOPro™.[17]  That dealer was located in Nashville, Tennessee.[18]  On March 5, 2009, Defendant proposed that the parties mutually terminate the Agreement and on March 12, 2009, Plaintiff rejected Defendant's proposal and demanded that Defendant fully comply with its obligations under the existing Agreement.[19]

On May 5, 2009, Plaintiff filed the instant action in the Eastern District of Pennsylvania, to which Defendant answered on June 5, 2009.[20]  In its Complaint, Plaintiff asserts that venue is proper because Defendant "transacts regular and continuous business with individuals and entities located in this district, and because many of the acts and events giving rise to this action occurred within this district."[21]  On June 5, 2009, Defendant filed the instant Motion.[22]  The Court has carefully reviewed Defendant's Motion to Transfer Venue, Plaintiff's Response, and all accompanying materials, and this matter is now ready for disposition.

**II.  STANDARD OF REVIEW**

Motions to transfer venue are resolved pursuant to 28 U.S.C. §1404, which provides that, "[f]or the convenience of parties and witnesses, and in the interest of justice, a district court may

---

[16] Def.'s Motion to Transfer Venue, Ex. A ¶ 14.

[17] Id.

[18] Id.

[19] Compl. ¶¶27, 28.

[20] Docket Entry Nos. 1 and 4.

[21] Compl. ¶ 5.

[22] Docket Entry No. 5.
4

transfer any civil action to any other district or division where it might have been brought."²³ "The first step in a court's analysis of a transfer motion is to determine whether venue would be proper in the transferee district."²⁴ Unless otherwise provided by federal law, 28 U.S.C. §1391(a) governs whether a particular venue is appropriate in a civil action wherein jurisdiction is founded only on diversity of citizenship, providing, in pertinent part, that:

> A civil action...may...be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.²⁵

The "substantial part" element of §1391(a)(2) does not require that the majority of operative facts underlying a claim occur in one district, although events that are only tangentially connected to the action are not sufficient to establish proper venue.²⁶ Consequently, multiple fora may be available under §1391(a)(2) if significant events or omissions occurred in various locations.²⁷

If the first prong of the inquiry is satisfied as to whether venue would be proper in the transferee district, the court must then determine whether a transfer would promote the convenience of the litigation and the interests of justice.²⁸ To do so, the Court must employ the

---

²³ 28 U.S.C. §1404(a).

²⁴ Weber v. Basic Comfort, Inc., 155 F. Supp. 2d 283, 284 (E.D. Pa. 2001).

²⁵ 28 U.S.C. §1391(a).

²⁶ Prell v. Columbia Sussex Corp., 2007 U.S. Dist. LEXIS 78533 at *6 (E.D. Pa. Oct. 22, 2007) (citing Park Inn Int'l, LLC v. Mody Enters., Inc., 105 F. Supp. 2d 370, 376 (D.N.J. 2000) (citing also Cottman Transmission Systs., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994)).

²⁷ Id. at *7.

²⁸ See Weber, 155 F. Supp. 2d at 284.

analysis established in <u>Jumara v. State Farm Insurance</u>, wherein the Court must assess the transfer motion in light of both private and public interests.[29] At all times during the transfer of venue analysis, "the burden of establishing the need for transfer ... rests with the movant ... [a]nd, the plaintiff's choice of venue should not be lightly disturbed."[30]

### III. DISCUSSION

#### A. Whether Venue is Proper in the Southern District of Iowa

Defendant asserts that the Southern District of Iowa is a proper venue pursuant to 28 U.S.C. §1391(a)(1) on the basis that Defendant is headquartered in Muscatine, Iowa and that Plaintiff's home State of Missouri neighbors the State of Iowa.[31] As HON is the sole Defendant in this matter, the Court agrees that venue for this matter may lie in the Southern District of Iowa because a civil action, founded solely upon diversity of citizenship, may be brought in "a judicial district where any defendant resides, if all defendants reside in the same State."[32]

Defendant also asserts that the Southern District of Iowa is a proper venue pursuant to 28 U.S.C. §1391(a)(2) on the basis that Iowa is where the Agreement was negotiated and executed; where the majority of the witnesses are located; and where most of the documentary evidence is stored.[33] For instance, Mr. Harvey of Optimal Interiors visited Defendant's Muscatine offices to market IOPro™ to its employees on numerous occasions in 2006 and 2007; thereafter, Mr. Harvey traveled to Iowa between ten to fifteen times to negotiate the terms of the

---

[29] 55 F. 3d 873, 879 (3d Cir. 1995).

[30] Id.

[31] Def.'s Mot to Transfer Venue ¶ 1.

[32] 28 U.S.C. § 1391(a)(1).

[33] Def.'s Mot to Transfer Venue ¶ 1.

Agreement; and Defendant's March 5, 2009 letter to Plaintiff, which sought to negotiate a mutual termination of the Agreement, was sent from Defendant's Muscatine offices to Plaintiff's offices in St. Louis, Missouri. Based on these undisputed facts, the Court finds that venue may lie in the Southern District of Iowa because a "substantial part" of the claims, events, or omissions occurred in within the State of Iowa. The Court also finds that since venue would be proper in the transferee district, a transfer of venue analysis is appropriate under 28 U.S.C. §1404(a).

B. **Jumara Factors**

Having determined that venue would be appropriate in the Southern District of Iowa, the Court must now employ the analysis established by the Third Circuit in Jumara to "'determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer' to that district."[34] Under Jumara, the Court must assess the transfer motion in light of both public and private interests.[35] As to the public interests enumerated in Jumara, which include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies; (5) the public policies of the fora; and (6) the familiarity of the courts with the applicable state law in diversity cases[36], this Court finds that many of the public interests are neutral. There are no practical obstacles to efficient litigation in either forum; a judgment

---

[34] Prell, 2007 U.S. Dist. LEXIS 78533 at *8 (quoting Jumara, 55 F.3d at 879).

[35] Id.

[36] Jumara, 55 F.3d at 879-880.

7

entered in either district is readily enforceable against either party; and neither forum appears to have a local interest or policy that is relevant to it or particularly implicated by this action.

The sixth public interest, however, familiarity of the courts with the applicable state law, is a relevant factor in this litigation. The analysis requires a threshold determination of which state's law applies to the case.[37] Here, the parties' underlying contract contains a choice-of-law provision, which provides that "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of Iowa...."[38] Plaintiff does not challenge the validity of this provision or the applicability of Iowa law.[39] "Where a choice of law clause is present in a contract, the court...give[s] great weight to it in determining the proper forum."[40] Moreover, a federal court generally has greater expertise in interpreting and applying the law of its home state than federal courts domiciled in foreign jurisdictions.[41] Therefore, the Jumara public interests favor transfer of this matter to the Southern District of Iowa.

Turning to the private interest enumerated in Jumara, which include "[1] plaintiff's forum preference...; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses...; and [6] the location of books and records..."[42], the Court recognizes that Plaintiff's forum preference is entitled "'considerable weight'" and "'should not

---

[37] Prell, 2007 U.S. Dist. LEXIS 78533 at *9.

[38] Compl., Ex. A at §11.8.

[39] See Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Transfer Venue at 10.

[40] Motors Drives & Controls, Inc. v. Green Techs., 2006 U.S. Dist. LEXIS 9793, at *5 (E.D. Pa. Mar. 10, 2006).

[41] See e.g., Fed. Ins. Co. V. Sammons Fin. Group, Inc., 595 F. Supp. 2d 962, 986 (S.D. Iowa 2009) (observing that "a federal court situated in Iowa with greater experience with Iowa law, is better positioned to apply that state law").

[42] Jumara, 55 F.3d at 879.

be disturbed lightly.'"[43]  Less weight, however, is accorded to Plaintiff's choice of forum when the selected venue is away from the state in which Plaintiff resides[44]; when a contractual choice of forum clause manifests a conflicting intention as to the forum[45]; or "when the central facts of the lawsuit occur outside the forum state".[46]

In the case *sub judice*, neither party is a resident of Pennsylvania and none of the negotiations, transactions, or business decisions between Plaintiff and Defendant occurred in Pennsylvania.  Plaintiff, however, asserts that venue in the Eastern District of Pennsylvania is appropriate because: (1) Defendant "regularly" conducts business in this district and has a registered agent in Pennsylvania; (2) Mr. Harvey of Optimal Interiors met with three of Defendant's dealers in this district to market IOPro™; (3) Mr. Harvey has "significant ties" to the Pennsylvania/New Jersey region; (4) he "frequently travels" to the Pennsylvania/New Jersey region for business and personal matters; and (5) Plaintiff's outside counsel is located New Jersey.[47]  Although Plaintiff's first two assertions provide a basis for personal jurisdiction by this Court, these factors are not compelling in determining whether the selected forum is convenient and best serves the interest of justice.  While Defendant "regularly" transacts business in Pennsylvania,[48] Plaintiff fails to show how Defendant's routine operations in Pennsylvania

---

[43] Prell, 2007 U.S. Dist. LEXIS 78533 at *15 (quoting In re Amkor Techn., Inc. Secs. Litig., 2006 U.S. Dist. LEXIS 93931 at *7 (E.D. Pa. Dec. 28, 2006) (quoting also Weber, 155 F. Supp. 2d at 285).

[44] See First Union Nat. Bank v. U.S., 55 F. Supp. 2d 331, 332-33 (E.D. Pa. 1999).

[45] See Jumara, 55 F. 3d at 880-81.

[46] LG Elecs., Inc. v. First Int'l Computer, 138 F. Supp. 2d 574, 590 (D.N.J. 2001).

[47]  Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Transfer Venue at 3-4, 7-8.  The Court notes that Plaintiff does not dispute that although Mr. Harvey met with three of Defendant's dealers in the Eastern District of Pennsylvania, he also met with forty-six other dealers located in various other jurisdictions, including California, New York, Tennessee, and Texas.

[48]  The Court notes that as "one of North America's leading workplace furniture providers, . . . HON sells its products through a national network of dealers and retailers."  See Compl. ¶ 2.  Therefore, Defendant conducts business "regularly" in many states, not just Pennsylvania.

relate to the operative facts underlying its breach of contract claim. As to Plaintiff's remaining assertions, Plaintiff's venue preference is already afforded substantial weight under the Jumara analysis, thus Mr. Harvey's significant family ties, his frequent travel to the Pennsylvania/New Jersey region, and the location of Plaintiff's outside counsel does not significantly add its arguments in favor venue being maintained in this district.

The remaining Jumara private interests strongly favor Defendant's choice of forum. For instance, most of the operative facts underlying Plaintiff's claim occurred in Iowa – not Pennsylvania. Likewise, many of Defendant's potential witnesses are located in Iowa, and Defendant's books and records are stored at its Iowa headquarters.[49] Therefore, the Jumara private interests favor transfer of this matter to the Southern District of Iowa. In sum, applying the balancing test set forth in Jumara to the facts of this case, the Court finds that both relevant private and public interests favor transfer to the Southern District of Iowa.

### C. Request for Additional Discovery

In its Memorandum of Law in Opposition to Defendant's Motion to Transfer Venue, Plaintiff requests that this Court permit "discovery into the nature and extent of HON's business contacts with the state of Pennsylvania, so that Pennsylvania's interests in adjudicating this dispute can be fully ascertained and measured against whatever public interest belongs to Iowa."[50] Plaintiff asserts that its request is based on its concern that "[t]he cornerstone of HON's motion to transfer is [an] unsupported assertion that the witnesses it would call are located in Iowa."[51] Facts, however, relied upon by this Court (e.g., the location of the parties; when and

---

[49] See Def.'s Mot. to Transfer Venue, Ex. A ¶ 17.

[50] Pl.'s Mem. of Law in Opp'n at 14.

[51] Id.

where the parties negotiated the underlying contract; and the location of physical evidence) are not contested by Plaintiff. Therefore, the Court finds that discovery devoted exclusively to the issue of venue would be time-consuming, unnecessary, and may ultimately lead to judicial waste. Consequently, Plaintiff's request for discovery into this matter is denied.

### IV.  CONCLUSION

For the reasons set forth above, Defendant's Motion to Transfer pursuant to 28 U.S.C. §1404(a) is hereby **GRANTED**. The Plaintiff's request for discovery into Defendant's presence in Pennsylvania prior to a decision on Defendant's Motion to Transfer is hereby **DENIED**. This case shall be transferred to the Southern District of Iowa.

An appropriate order follows.